UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES EGGLESTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18 CV 13 CDP |
| | ) |
| BON APPETIT MANAGEMENT CO., et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff James Eggleston brings this action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that defendant Bon Appetit Management Co. and several of its managers – namely, defendants Catherine Jones, Katherine Martin, and Mike Fairchild – unlawfully discriminated against him in his employment on account of his race and in retaliation for his complaint of discrimination. Defendants move for summary judgment on Eggleston's claims. I will grant the motion on Eggleston's race discrimination claim as well as on all claims against Fairchild. But because there are genuine issues of material fact on Eggleston's retaliation claim against the remaining defendants, I must deny summary judgment on that claim.

## Background

Plaintiff Eggleston is an African American who worked full-time as a

catering attendant for Bon Appetit beginning in September 2015. Bon Appetit terminated his employment in February 2017.

At all times relevant to the complaint, defendant Fairchild was the commissary manager at Bon Appetit and was responsible for ordering, storing, and delivering all product related to Bon Appetit's food service at the Washington University campus. Fairchild had no management or supervisory duties relating to Bon Appetit's catering employees. Defendant Martin was assistant catering operations manager and was Eggleston's immediate supervisor. Martin reported to and was supervised by defendant Jones, catering operations manager. All individual defendants are Caucasian.

On August 12, 2016, Fairchild and another Bon Appetit employee (who is also Caucasian) wheeled a large, wire, cage-like container into the catering area where Eggleston and three other African American catering attendants were working. Fairchild remarked to the four attendants that they would be put into the cage if they got out of order and that the cage could fit three of them. Fairchild and the other employee then left.

Eggleston and the three other attendants immediately located defendant Jones and reported the incident. She met with them privately and obtained their accounts of the incident. Jones observed the attendants to be upset and understood their concern to be that Fairchild's remarks were made to them because of their

race. That same date, Jones reported the incident to Kerri Dietl, Bon Appetit's human resources manager. Jones also reported the incident to defendant Martin. Human resources issued Fairchild a written warning for his comment.

During the investigation of the cage incident, a human resources representative, Denise Massey, learned from another employee that Eggleston intended to bring a lawsuit on account of the cage incident. This intention was reiterated to Massey and Jones on February 2, 2017, in another statement made by the employee in relation to Eggleston's work performance. Jones and Rosemary Pastore, Bon Appetit's catering director, thereafter recommended to human resources that Eggleston be terminated, and Bon Appetit terminated Eggleston's employment effective February 16, 2017.

Eggleston claims that after he complained of the cage incident in August 2016, Jones, Martin, and another direct supervisor, Amanda Brock, subjected him to harassment and a hostile work environment that included name-calling, bullying, a delayed evaluation, changed schedules, and working conditions that were manipulated to set him up for disciplinary action. Eggleston contends that this harassment was on account of his race and in retaliation for complaining about the cage incident, and that Massey was dismissive of his complaints regarding this harassing conduct. He also contends that he was denied advancement and was ultimately discharged on account of his race and in retaliation for his earlier

complaint. Eggleston brings his claims of race discrimination and retaliation against Bon Appettit under Title VII and § 1981. He brings the same claims against Fairchild, Jones, and Martin under § 1981.

Fairchild, Jones, and Martin move for summary judgment, arguing that they are not liable under § 1981 because none of them made the employment decisions challenged by Eggleston in this action. Bon Appetit claims that it is entitled to summary judgment because Eggleston cannot establish a *prime facie* case of either race discrimination or retaliation. Bon Appetit also argues that, nevertheless, legitimate, non-discriminatory, and non-retaliatory reasons supported any adverse employment action and, further, that Eggleston cannot show that these reasons are pretext for discrimination or retaliation. Finally, Bon Appetit argues that it cannot be vicariously liable for Fairchild's alleged harassment.

**Summary Judgment Standard**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

Where sufficient evidence exists to support a factual dispute, a jury must resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

A party cannot rely on unsworn/unattested declarations or statements to support or oppose a motion for summary judgment. *Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016). I therefore do not consider Eggleston's unsworn statement (ECF 35-1) in determining defendants' motion.

## Discussion

A plaintiff may establish a claim of intentional discrimination through either direct evidence or indirect evidence. *Williams v. City of Marston*, 857 F. Supp. 2d 852, 858 (E.D. Mo. 2012). "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) (internal quotation marks and citation omitted). "[S]tray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." *Id.* (internal quotation marks and citations omitted). "Direct evidence, however, may include evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a

discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions." *Id.* at 1161 (internal quotation marks and citations omitted).

Here, Eggleston points to Fairchild's cage remarks and Martin's alleged repetition of the remarks a few days later as direct evidence of defendants' discriminatory animus. While the remarks provided the basis for Eggleston's complaint of race discrimination to Bon Appetit, they did not amount to more than stray remarks in the workplace made in circumstances unrelated to any decisional process. The remarks themselves are not evidence of the alleged harassment or termination that followed Eggleston's complaint. Accordingly, because the remarks do not establish a specific link between defendants' alleged discriminatory animus and the alleged unlawful conduct, they do not constitute direct evidence.

Absent direct evidence of discrimination, I must apply the familiar *McDonnell Douglas*[1] burden-shifting analysis when analyzing Eggleston's claims of employment discrimination. *See King*, 553 F.3d at 1160, 1162; *see also Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773 (8th Cir. 2016); *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). Under this framework, Eggleston must first establish a *prima facie* case of discrimination. If Eggleston meets this burden, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

for the adverse employment action. If defendants meet this burden of production, Eggleston must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendants are not their true reasons, but are pretext for discrimination. *Grant*, 841 F.3d at 773. At all times, Eggleston bears the ultimate burden of proving that he was unlawfully discriminated against. *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1107-08 (8th Cir. 1998). This analysis applies equally to Title VII and § 1981 claims in employment cases. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997).

Race Discrimination

Eggleston claims he was subjected to a hostile work environment, was denied advancement, and was ultimately terminated on account of his race.

As an initial matter, Eggleston cannot establish a *prima facie* case that he was denied advancement. The undisputed evidence shows that Eggleston never sought or applied for any promotion or "advancement" while employed by Bon Appetit, nor has he identified any advancement or opportunities denied him. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996) (for *prima facie* case, aggrieved employee must show, *inter alia,* that he "was qualified and applied for a promotion to an available position[.]"). Speculation that he may have been promoted in the future if he had not been terminated is insufficient to survive summary judgment. *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th

- 7 -

Cir. 2014).

With respect to Eggleston's claims of hostile work environment and termination based on race, Eggleston likewise fails to establish a *prima facie* case. To prevail on his claim of hostile work environment, Eggleston must show that: 1) he is a member of a protected group; 2) he was subject to unwelcome race-based harassment; 3) the harassment was because of membership in the protected group; and 4) the harassment affected a term, condition, or privilege of employment. *Banks*, 829 F.3d at 667. "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 666 (internal quotation marks, alteration, and citations omitted). Other than Fairchild's and Martin's isolated cage remarks and an alleged isolated "boy" reference directed to him by Martin, Eggleston identifies no other harassment based on race. "'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999)); *see also Cooper Tire & Rubber Co. v. Nat'l Labor Relations Bd.*, 866 F.3d 885, 892 (8th Cir. 2017). There is no evidence that any race-based harassment rose to such a level that it poisoned the

work environment.

To make a *prima facie* case of unlawful termination based on race, Eggleston must show, *inter alia*, that the circumstances of his termination give rise to an inference of race-based discrimination. *Grant*, 841 F.3d at 773. Eggleston may satisfy this element in a number of ways, such as showing biased comments by a decisionmaker, that similarly-situated employees who are not in his protected class were treated more favorably, or that he was replaced by a non-protected person with similar qualifications. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011); *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (evidence of pretext may satisfy this *prima facie* element). Here, Eggleston does not identify any circumstances underlying his termination that give rise to an inference of discrimination based on race. The isolated remarks set out above – made by nondecisiomakers months before his termination – are insufficient to establish such an inference. Nor do allegations that his supervisors called him "dumb" or "stupid" provide a sufficient basis upon which it can reasonably be inferred that he was terminated because of his race, especially when these race-neutral terms – albeit disparaging – were used in situations unrelated to his termination. *See Stewart v. Rise, Inc.*, 791 F.3d 849, 858 (8th Cir. 2015) (court must focus specifically upon circumstances of actual termination to determine whether there is sufficient support for inference of discrimination); *Twymon v.*

*Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (facially race-neutral terms).

Accordingly, because Eggleston has failed to establish a *prima facie* case that the challenged actions – that is, failure to advance, hostile work environment, and termination – were on account of his race, I will grant defendants summary judgment on his claims of race discrimination.

Retaliation

As stated above, the undisputed evidence shows that Eggleston never sought or applied for any promotion or "advancement" while employed by Bon Appetit. Nor has he identified any advancement or opportunities allegedly denied him. He therefore has failed to establish a *prima facie* case that he was denied advancement in retaliation for engaging in protected conduct. *See Shannon*, 72 F.3d at 682. I will therefore grant summary judgment to the defendants on this claim.

However, upon review of the evidence *in toto*, there appear to be genuine issues of material fact regarding whether defendants subjected Eggleston to a hostile work environment and/or terminated his employment in retaliation for protected conduct relating to his complaint regarding the cage incident. I will therefore deny summary judgment on Eggleston's claim of retaliation.

To establish a *prima facie* case of retaliation under either Title VII or § 1981, Eggleston must show that: 1) he engaged in protected conduct, 2) reasonable employees would have found the challenged retaliatory action

materially adverse, and 3) the materially adverse action was causally linked to the protected conduct. *Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009); *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). With respect to claims of hostile work environment, if a supervisor's alleged harassment did *not* result in a tangible employment action, the employer is nevertheless vicariously liable for the harassment if: 1) it failed to exercise reasonable care to prevent and correct any harassing behavior, and 2) the aggrieved employee unreasonably failed to take advantage of the preventive or corrective opportunities provided by the employer. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). For purposes of vicarious liability, an employee is a "supervisor" if he or she is "empowered by the employer to take tangible employment actions against the victim[.]" *Id.*

Here, the evidence shows that on August 12, 2016, Eggleston and three other African American catering attendants complained to Jones regarding the cage incident, and Jones took their complaints to human resources. Evidence also shows that, after making their complaints, the catering attendants were concerned that the matter was not being properly investigated, and Eggleston frequently shared this concern with Massey, the human resources representative. The evidence also shows that Massey learned from another catering attendant that Eggleston was considering litigation over the matter and was encouraging this

other attendant to join him in bringing suit.[2] Finally, evidence shows that when the decision to terminate Eggleston was made in February 2017, Massey and Jones had additional information that Eggleston was planning to pursue litigation regarding the cage incident.[3] On this evidence, Eggleston has made a sufficient showing to establish a *prima facie* case that the alleged harassment and ultimate termination were in retaliation for his engaging in protected conduct, that is, considering litigation on his complaint of race discrimination.

To the extent defendants argue that Eggleston's poor performance constitutes a legitimate, non-discriminatory reason for his termination and that the workplace conduct of which he complains is not actionable harassment because of its infrequent nature, I find there to be genuine issues of material fact as whether these reasons proffered by defendants are pretext for retaliation.

A plaintiff may show pretext by showing that an employer treated him differently from similarly-situated employees. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012). He must show, however, that he and the other employee(s) are similarly situated in all relevant respects. *Id.* There is evidence from which a fact-finder could conclude that Eggleston is able to meet this rigorous test.

---

[2] ECF 31-16, Massey Depo. at p. 31.

[3] ECF 31-5 at p. 112, Exh. 8 to Jones Depo.; ECF 31-15, Exh. N, Blount Statement.

To be similarly situated in all relevant respects, Eggleston and the other employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). Here, Eggleston and the other catering attendants dealt with the same supervisors, were subject to the same standards, and engaged in the same conduct, that is, complained that Fairchild's derogatory remarks were based on race. However, the evidence shows that Eggleston was the only one of these attendants who articulated an intention to bring a lawsuit based on the cage incident and, further, that human resources and the supervisor who recommended his termination were aware of this intention.

Although defendants cite to reported incidents of Eggleston's poor performance as legitimate reasons for his discharge, I note that the first formal documented report is dated August 30, 2016[4] – two weeks after Eggleston complained of the cage incident – even though the performance issues are reported to have begun in June. Between October 10 and December 21, Eggleston received three additional formal counseling memoranda, documenting several performance-related issues. There exists a dispute, however, as to whether the circumstances giving rise to the poor performance that occurred after he reported the cage

---

[4] ECF 31-3 at p. 252, Exh. 19 to Eggleston Depo.

incident and after articulating an intent to bring a lawsuit were based on Eggleston's own doing or were manipulated to give the appearance of poor performance. For instance, a dispute exists as to whether Eggleston's failure to appear at a mandatory meeting was because of his insubordination or because Martin did not include his name on the list of persons required to attend. Another dispute exists as to whether Eggleston's purported failure to follow his supervisors' instructions regarding event set up was on account of poor performance or because his supervisors repeatedly and deliberately gave him conflicting instructions. Further, a dispute exists as to whether his supervisors "played with" Eggleston's schedule, causing him to be late on occasion or unable to properly record his shift on his time card. Further, although the undisputed evidence shows it to be nearly an everyday occurrence for catering attendants to forget items needed for a catering event, there is no evidence that anyone other than Eggleston was disciplined for this issue during the relevant time. There is also evidence that in October 2016, a corporate representative greeted Eggleston with the moniker "trouble" when passing through the kitchen and told him to "leave the cage incident alone."

Eggleston claims that when he attempted to report this and other alleged harassing conduct to Massey, she was dismissive of him and his complaints. Eggleston also claims that Massey repeatedly told him to "get over" the cage incident. From this, Eggleston understood that human resources did not want to

hear anything more from him.

Finally, the evidence recounts different versions of the circumstances that gave rise to Eggleston's termination in February 2017, including whether Eggleston failed to remain at a catering event as scheduled and whether he replenished the food at the event or allowed it to run out. I am prohibited from making credibility judgments on a motion for summary judgment. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1075 (8th Cir. 2006) (citing *Yates v. Rexton, Inc.*, 267 F.3d 793, 800 (8th Cir. 2001)).

When I consider this alleged conduct with evidence of Bon Appetit's knowledge that Eggleston intended to pursue litigation on his race-based complaint regarding the cage incident, I conclude that Eggleston has presented sufficient evidence to create a genuine issue of material fact as to whether he was subjected to a hostile work environment and/or was terminated in retaliation for engaging in protected conduct. To the extent defendants argue that the alleged harassment did not cause Eggleston to suffer any adverse employment action, there nevertheless are genuine issues of material fact as to whether Bon Appetit failed to exercise reasonable care to prevent and correct any harassing behavior, and whether Eggleston unreasonably failed to take advantage of preventive or corrective opportunities.

I will therefore deny defendants' motion for summary judgment on

Eggleston's claim of retaliation.

Section 1981 Claims Against Individual Defendants

A defendant's personal liability under § 1981 requires proof of intentional discrimination by *that defendant*. *Ellis v. Houston*, 742 F.3d 307, 327 (8th Cir. 2014) (Loken, J., concurring) (citing *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391(1982)); *Green v. Missouri*, 734 F. Supp. 2d 814, 842 (E.D. Mo. 2010). Because Eggleston does not allege, and the undisputed evidence fails to show, that Fairchild engaged in any retaliatory conduct toward Eggleston, I will grant summary judgment to Fairchild on Eggleston's remaining claim of retaliation. But because genuine issues of material fact remain as to whether, and to what extent, Jones and Martin engaged in the alleged harassing conduct and/or influenced the decision to terminate Eggleston's employment, I will deny them summary judgment on the claim.

**Trial Setting**

In light of my rulings, this matter will proceed to trial on Eggleston's claim that he was subjected to a hostile work environment and was terminated in retaliation for engaging in protected conduct. With my current schedule, however, I must remove the case from its present trial setting of March 4, 2019, and reset it at a later date – most likely in April or May of 2019. I will therefore order counsel to meet and confer regarding a potential trial setting in April or May of 2019, and

will set a scheduling conference to establish a date certain for trial. In the meanwhile and until further Order of the Court, the parties are excused from filing their required pretrial materials.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [30] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendant Mike Fairchild shall have summary judgment on plaintiff's claims in their entirety, and he is dismissed from this action with prejudice.

**IT IS FURTHER ORDERED** that defendants Bon Appetit Management Co., Catherine Martin, and Katherine Jones shall have summary judgment on plaintiff's claim that he was subjected to a hostile work environment and was terminated on account of his race.

**IT IS FURTHER ORDERED** that defendants Bon Appetit Management Co., Catherine Martin, and Katherine Jones shall have summary judgment on plaintiff's claim that he was denied advancements and opportunities on account of his race and in retaliation for engaging in protected conduct.

**IT IS FURTHER ORDERED** that this matter will proceed to trial against Bon Appetit Management Co., Catherine Martin, and Katherine Jones on plaintiff's claim that he was subjected to a hostile work environment and was

terminated in retaliation for engaging in protected conduct.

**IT IS FURTHER ORDERED** that a scheduling conference is set for **Wednesday, February 6, 2019 at 10:00 a.m.** for the purpose of setting this case for trial on a date certain. Counsel must meet and confer prior to the conference and be prepared to discuss a potential trial setting in April 2019. This conference will be conducted by telephone, and plaintiff's counsel is responsible for placing the call and for having all counsel on the line before contacting my chambers at 314-244-7520.

The parties are excused from filing their required pretrial materials until further Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of January, 2019.